IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL FORTE, JR., *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1417-N |
| | § | |
| THE DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT AND DR. JESUS | § | |
| "JESS" CARREON, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendants The Dallas County Community College District

("DCCCD") and Dr. Jesus "Jess" Carreon's ("Carreon") Motion to Dismiss and Alternative

Rule 7 Motion to Compel Reply [21 & 23].  For reasons discussed below, the Court denies

DCCCD's motion and grants in part and denies in part Carreon's motion.

### I. BACKGROUND

On July 16, 2005, Plaintiffs Paul Forte, Jr., and James M. Hawkins, Jr. filed a pro se

complaint against Defendants on behalf of themselves and all other similarly situated African

American employees of DCCCD.  Plaintiffs contend they were discriminated against because

of their race and that Defendants thwarted Plaintiffs' attempt to file a grievance pursuant to

DCCCD's internal grievance protocol.

With regard to the alleged discrimination, Plaintiffs argue that DCCCD engages in

discriminatory employment practices by implementing disparate employment terms and

ORDER – PAGE 1

conditions[1] and failing to draft written promotion policies or procedures for administrators

and professional support staff and written and published affirmative action plans.  At bottom,

Plaintiffs allege they, and similarly situated African Americans, were denied fair and equal

opportunity to be considered or promoted, or to otherwise compete on equal footing with

DCCCD employees who are not members of the Class, through an existing systematic pattern

and practice of discrimination.

On or about September 9, 2003, Plaintiffs filed an internal class action grievance for

alleged institutional employment discrimination, which Defendants allegedly attempted to

thwart.  In response to Plaintiffs' grievance, Carreon selected Terri Swain to conduct an

investigation into the alleged discrimination.  On February 27, 2004, Carreon informed

Plaintiffs that, upon reviewing Ms. Swain's findings, he concluded that no discrimination

occurred.  Plaintiffs requested and were denied summary findings by Carreon.  Plaintiffs then

attempted to proffer a settlement demand, and Carreon refused.  Finally, Plaintiffs claim they

attempted to appeal Carreon's decision, but, because of Defendants' bad faith, could not.[2]

On March 30, 2004, Plaintiffs filed charges of discrimination with the Dallas District Office

of the United States Equal Employment Opportunity Commission ("EEOC") and on April

---

[1]According to Plaintiffs, such terms and conditions include the practice of funneling African American administrative and support staff employees into deadend jobs with limited opportunity for advancement, retaliatory action, and certain actions that have an adverse impact on African Americans.

[2]Plaintiffs do not specify the conduct they allege constitutes bad faith.

ORDER – PAGE 2

19, 2005, received a "Notice of Right to Sue."  Plaintiffs subsequently filed this action on July 16, 2005.

Defendants now seek dismissal of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).  Both DCCCD and Carreon contend that Plaintiffs cite to numerous constitutional provisions, statutes, Executive Orders, and policies that Defendants have allegedly violated, but offer no factual support for their allegations of discrimination. Defendants thus contend that Plaintiffs failed to meet the pleading standard of Rule 8(a).[3]

DCCCD's motion to dismiss focuses primarily on Plaintiffs' class claims and section 1983 claims.  First, DCCCD seeks dismissal of the class claims on the grounds that the relief Plaintiffs seek – namely, compensatory and punitive damages – takes the claims beyond the confines of Rule 23(b) class action remedies.  *See* FED. R. CIV. P. 23(b).  Next, DCCCD seeks dismissal of Plaintiffs' 42 U.S.C § 1983 ("section 1983") on the grounds that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., ("Title VII") preempts such claims.

Carreon's motion focuses on claims brought against him in his official capacity as well as Plaintiffs' Title VI, 42 U.S.C. § 2000d, *et seq*. ("Title VI"), Title VII, and section 1983 claims.  First, Carreon contends that claims against him in his official capacity should be dismissed, because such claims are equivalent to claims against DCCCD.  Because DCCCD is not claiming Eleventh Amendment immunity from suit, Carreon contends these

---

[3]Carreon also contends that Plaintiffs failed to meet the standard of Federal Rule of Civil Procedure 7(a).  The Court addresses this argument below.

claims are redundant.  Relatedly, Carreon contends that Plaintiffs' Title VII claim should be dismissed because it cannot be brought against him in his individual capacity.  Finally, Carreon contends Plaintiffs' Title VI claim and section 1983 claim are preempted by Title VII and therefore must be dismissed.  Alternatively, Carreon moves for an order requiring Plaintiffs to replead operative facts of their section 1983 claim, overcoming the defense of qualified immunity.  For reasons explained below, the Court denies DCCCD's motion and grants in part and denies in part Carreon's motion.

## II.  LEGAL STANDARDS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."  *Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  Courts may dismiss a complaint for failure to state a claim only if it is clear that the plaintiff can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In reviewing a Rule 12(b)(6) motion, the Court must liberally construe the complaint in favor of the plaintiff and accept as true all well-pleaded facts.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

The standard for dismissal incorporates and must be viewed in light of the simplified pleading standards embodied in the Federal Rules of Civil Procedure.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  According to Rule 8(a)(2), a complaint must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Such a statement is adequate so long as it "give[s] the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512

(quoting *Conley*, 355 U.S. at 47). Therefore, "[p]ursuant to Rule 8(a), a complaint will be

deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise

to the claim, or (2) set forth sufficient information to outline the elements of the claim or

permit inferences to be drawn that these elements exist." *Beanal v. Freeport-McMoran, Inc.*,

197 F.3d 161, 164 (5th Cir. 1999). However, "[w]hen a public official pleads the affirmative

defense of qualified immunity in his answer," Rule 7 permits "the district court, on the

official's motion or on its own, to require the plaintiff to reply to that defense in detail."

*Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

### III.  THE COURT DENIES DCCCD'S MOTION TO DISMISS

### A.  *Motion to Dismiss Class Claims is Premature*

DCCCD argues that the Court must dismiss Plaintiffs' class claims because injunctive

or declaratory relief does not predominate. In *Allison v. Citgo Petroleum Corp.*, 151 F.3d

402, 411 (5th Cir. 1998), the Fifth Circuit recognized that "[Rule 23(b)(2)] is clear that

claims seeking injunctive relief are appropriate for (b)(2) class certification," but is "silent

as to whether monetary remedies may be sought in conjunction with" such relief. *Id.*

However, the Advisory Committee notes on Rule 23 imply that monetary relief is permissible

under (b)(2) as long as such relief does not predominate. FED. R. CIV. P. 23 (advisory

committee notes) (class certification under (b)(2) "does not extend to cases in which the

appropriate final relief relates exclusively or predominantly to money damages."). "[L]ike

nearly every other circuit, [the Fifth Circuit] adopted the position taken by the advisory

ORDER – PAGE 5

committee that monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory." *Id.*

Also like nearly every circuit, the Fifth Circuit maintains that a determination of class maintainability "usually should be predicated on more information than the complaint itself affords." 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & CIVIL PROCEDURE § 1785.3 (3d ed. 2005); *Huff v. N.D. Cass Co.*, 485 F.2d 710, 713 (5th Cir. 1973) ("[m]aintainability [of a class action] may be determined on the basis of pleadings, but the determination usually should be predicated on more information than the complaint itself affords.") (internal citations and quotations omitted).  The Fifth Circuit explained, a "court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable." *Huff*, 485 F.2d at 713.  Here, parties are still in the early stages of pleading and have yet to conduct meaningful discovery. Therefore, DCCCD's motion to dismiss is premature.  Accordingly, the Court denies DCCCD's motion to dismiss Plaintiffs' class claims.

### B.  Plaintiffs Must Replead Their Section 1983 Claims

Next, DCCCD argues that Plaintiffs' section 1983 claims alleging race discrimination in the employment context are preempted by Title VII's comprehensive remedial scheme. Specifically, DCCCD contends that Plaintiffs fail to plead facts that would support a section 1983 claim in the absence of Title VII.

ORDER – PAGE 6

Through Title VII, Congress made unlawful certain employment practices that discriminate against individuals based on race, color, religion, sex, or national origin, and provided a comprehensive remedial scheme to enforce its strictures.  42 U.S.C. § 2000e-2. Such "unlawful employment practices" include, among others, "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment."  *Id.* at § 2000e-2(a)(1).  Congress also provided an extensive remedial scheme for its enforcement. 42 U.S.C. § 2000e-5.  Under this remedial scheme, plaintiffs, among other things, must first file a claim with an administrative agency within a limited amount of time before filing a claim in the district court.

Unlike Title VII, "[section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States."  *Gonzaga University v. Doe*, 536 U.S. 273, 285 (2002) (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979)).  In other words, "one cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything."  *Chapman*, 441 U.S. at 617.  Instead, a plaintiff must demonstrate that a statute or constitutional provision manifests an intent to both create a right and provide a private remedy for a violation of that right before invoking section 1983.  *Id.* at 283-85.  In some situations, however, a statute's remedial scheme is "sufficiently comprehensive . . . to demonstrate congressional intent to preclude remedy of

suits under § 1983." *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995) (citations and quotations omitted).

In *Irby v. Sullivan*, 737 F.2d 1418, 1428 (5th Cir. 1984), the Fifth Circuit examined Title VII's comprehensive remedial scheme and held that rights created by Title VII "may not be asserted within the remedial framework of section 1983." The Court explained that to allow otherwise would enable a plaintiff to circumvent the "detailed and specific provisions of Title VII." *Id.* at 1429. For example, section 1983 authorizes compensatory and punitive damages, which may not be available under Title VII, and allows the plaintiff to demand a jury, which, again, is not allowed under Title VII. *Id.* Most importantly, "if a violation of Title VII could be asserted through . . . section[] . . . 1983, 'the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.'" *Id.* (quoting *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 376 (1979)). Therefore, section 1983 claims to redress rights created by Title VII are preempted by the comprehensive remedial scheme provided in that statute.

On the other hand, when an employee alleges employer conduct that violates Title VII as well as rights secured by either the Constitution or federal statute existing at the time Title VII was enacted, a plaintiff may seek remedies provided by section 1983. *Lakoski*, 66 F.3d at 756 (Congress "did not intend Title VII to preempt § 1983 suits based upon rights such individuals have already been granted . . . .") (internal quotations omitted); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) ("Where an employee

ORDER – PAGE 8

establishes employer conduct that violates Title VII and rights derived from another source – the Constitution or federal statute – which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII."). When Congress extended Title VII's strictures to state and local employees, it intended to supplement existing rights and remedies aimed at redressing employment discrimination and "therefore . . . [did] not affect existing rights . . . granted by previous legislation." H.R. Rep. No. 92-238. Thus, a plaintiff's section 1983 claim seeking to redress a right created prior to Title VII's enactment is not preempted. *See Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir.1985) ("[T]he Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII.").

Here, Plaintiffs' complaint is too vague to determine whether their section 1983 claim seeks to redress rights created by Title VII or whether it seeks to vindicate employment rights existing prior to Title VII's enactment. On pages two through three and sixteen through seventeen of their complaint, Plaintiffs state that Defendants have deprived Plaintiffs and the Class of rights secured by a laundry list of constitutional and statutory provisions, including

ORDER – PAGE 9

the Fifth, Thirteenth, and Fourteenth Amendments to the United States Constitution.[4]  Yet,

when setting forth the factual allegations, Plaintiffs failed to identify the rights violated or

distinguish their Title VII claims from the others.  Moreover, Plaintiffs maintain in their

response to Defendants' motions that they "allege claims for (1) Intentional Discrimination

Based on Race/Color in Violation of Title VII, (2) Discrimination Against the Named

Plaintiffs and the Class in Violation of Section 1981, (3) Disparate Impact in Violation of

Title VII, and (4) Retaliation against both the DCCCD and . . . Carreon."[5]  Pl. Response Brief

to Carreon at 2; Pl. Response Brief to DCCCD at 2.  Plaintiffs make no mention of a section

1983 claim seeking to redress a right created prior to Title VII's enactment.  Therefore, it is

not clear, for example, whether Plaintiffs seek to redress a violation of rights granted by the

Thirteenth and Fourteenth Amendments – clearly enacted before Title VII – or whether

Plaintiffs' claims reside exclusively within the confines of Title VII.  Nonetheless, because

of the lenient pleading standard and mention of the constitutional provisions in Plaintiffs'

---

[4]Specifically, Plaintiffs claim Defendants

> have deprived Plaintiffs and the Class of rights secured by the Fifth and
> Fourteenth Amendments to the United States Constitution; the Civil Rights
> Act of 1866 and Section 2 of the Thirteenth Amendment to the United States
> Constitution; the Civil Rights Act of 1871; Title VI of the Civil Rights Act of
> 1964, 42 U.S.C. § 2000d; Title VII . . .; Executive Order 11246, as Amended;
> the Civil Rights Act of 1991; the Uniform Guidelines on Employee Selection
> Procedures, September 11, 1978; 42 U.S.C. § 1981-1983; [etc.]

Compl. at 2-3 & 16-17.

[5]Plaintiffs pleads these claims as counts one through four in their complaint and plead
no other counts.

complaint, the Court denies DCCCD's motion to dismiss.  However, because Plaintiffs'

complaint is unclear, the Court orders Plaintiffs to replead their section 1983 claims, setting

forth the rights they seek to vindicate and the factual allegations supporting their claims.

Plaintiffs' are directed to submit their amended complaint to the Court and all parties within

fifteen (15) days of this Order.

### IV.  CARREON'S MOTION TO DISMISS

#### A.  The Court Dismisses Claims Brought Against
#### Carreon in his Official Capacity

Supreme Court precedent makes clear that a suit against a government official in his

or her official capacity is "only another way of pleading an action against an entity of which

[the official] is an agent."  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55

(1978).  If the government entity receives notice of the suit and an opportunity to respond,

an "official-capacity suit is, in all respects other than name, to be treated as a suit against the

entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "It is *not* a suit against the official

personally . . . ." *Id.*  Therefore, when a governmental entity can be sued directly for

damages and injunctive or declaratory relief, official-capacity suits are unnecessary.[6]

---

[6]In response to this motion, Plaintiffs argue that claims for prospective injunctive relief transform a state official acting in an official capacity into a "person" for purposes of section 1983.  In other words, Plaintiffs contend an *Ex parte Young*, 209 U.S. 123 (1908) claim survives in this situation.  While correct that, under *Ex parte Young*, a claim for prospective injunctive relief to end a continuing violation of federal law transforms a state official acting in an official capacity into a "person" for purposes of section 1983, Plaintiffs fail to recognize that *Ex parte Young* is a narrow exception to the doctrine of sovereign immunity meant to be invoked to enjoin unlawful activity of the state, which cannot be sued directly in its own name.  When, as here, a plaintiff can sue a governmental entity directly, *Ex parte Young*'s legal fiction is unnecessary.  Therefore, this argument fails to save

ORDER – PAGE 11

*Graham*, 473 U.S. at 167 n. 14 ("[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief.").  Because, here, Plaintiffs can sue DCCCD directly, and because DCCCD received notice of the suit and an opportunity to respond, claims against Carreon in his official capacity are unnecessarily duplicative. Accordingly, the Court dismisses Plaintiffs' claims against Carreon in his official capacity.

### B.  Plaintiffs Can Maintain Neither a Title VII Claim Nor a Title VI Claim Against Carreon

The Court also dismisses Plaintiffs' Title VII claims against Carreon because a plaintiff cannot maintain a suit against an official in his individual capacity.  As discussed above, "a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity." *Smith v. Amedisys Inc.*, 298 F.3d 434, 449 (5th Cir. 2002). Although Title VII defines "employer" to include "any agent," 42 U.S.C. § 2000e(b), the Fifth Circuit has held that "a party may not maintain a suit against *both* an employer and its agent [in an official capacity] under Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).  Furthermore, the Fifth Circuit does not "interpret the statute as imposing individual liability for such a claim." *Id.*  Accordingly, the Court dismisses Plaintiffs' Title VII claims against Carreon.

Additionally, the Court dismisses Plaintiffs' Title VI claim against Carreon because individuals may not be held liable for discrimination under Title VI.  *Shotz v. City of*

---

Plaintiffs' claims against Carreon in his official capacity.

ORDER – PAGE 12

*Planation*, 344 F.3d 1161, 1169 (11th Cir. 2003) (citing cases).  Title VI states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The Supreme Court, interpreting related statutory language nearly identical to Title VI, explained that "Congress limited the scope [of the statutory provision] to those who actually 'receive' federal financial assistance."  *United States Dep't of Transp. V. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986) (discussing section 504 of the Rehabilitation Act, 29 U.S.C. § 794).  Similarly, "the majority of courts that have considered the issue [in the Title IX context] have ruled that Title IX does not permit suits against individuals."  *Goins v. Hitchcock I.S.D.*, 191 F. Supp. 2d 860, 869 (S.D.Tex. 2002) (citing cases).  Significantly, Title IX "was modeled after Title VI . . ., which is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs."  *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 286 (1998).  Therefore, "[b]y extension, the text of Title VI also precludes liability against those who do not receive federal funding, including individuals."  *Shotz*, 344 F.3d at 1170.  Accordingly, the Court dismisses Plaintiffs' Title VI claim against Carreon in his individual capacity.

### C.  Plaintiffs Must Replead Section 1983 Claims

Much like DCCCD, Carreon argues that Plaintiffs' section 1983 claim is preempted by Title VII.  While not entirely clear in his motion, Carreon, like DCCCD, presumably contends that Plaintiffs' section 1983 claim fails because it seeks to redress rights created by

ORDER – PAGE 13

Title VII and is thus preempted. For reasons discussed above, the Court denies Carreon's

motion to dismiss, and orders Plaintiffs to replead their section 1983 claims, setting forth the

rights they seek to vindicate and the factual allegations supporting their claims. Again,

Plaintiffs' are directed to submit their amended complaint to the Court within fifteen (15)

days of this Order.

Additionally, the Court grants Carreon's motion to compel a pleading that address his

assertion of qualified immunity. When a public official defendant in a section 1983 action

pleads the affirmative defense of qualified immunity, "the court may, in its discretion, insist

that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity.

Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's

discretion not to do so is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d

at 1433-34. Because Plaintiffs' response to Carreon's motion to dismiss falls short of

"heightened pleading," the Court directs Plaintiffs to reply to Carreon's defense of qualified

immunity with "sufficient precision and factual specificity to raise a genuine issue as to the

illegality of defendant's conduct at the time of the alleged acts."[7] *Id*. at 1434.

---

[7]In other words, Plaintiffs must set forth (1) the constitutional right at issue, (2) the operative facts alleging that Carreon violated the constitutional right, and (3) the factual basis for the contention that Carreon reasonably should have known that an action violated a clearly established constitutional right. *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995).

ORDER – PAGE 14

Signed March 6, 2007.

_____
David C. Godbey
United States District Judge